**IT IS ORDERED as set forth below:**

**Date: January 15, 2020**



_____
**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>Marvin Kevin Blocker and Erin Ann Blocker,<br><br>    Debtors. | CASE NO. 18-69243-BEM<br><br>CHAPTER 7 |
| Teresa M. Hinton, Sean E. Hinton, and Metro Diesel Suspension, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Marvin Kevin Blocker and Erin Ann Blocker,<br><br>    Defendants. | ADVERSARY PROCEEDING NO.<br>19-5117-BEM |

**ORDER DENYING SUMMARY JUDGMENT**

This matter comes before the Court on Plaintiffs' *Motion for Summary Judgment* (the "Motion"), filed November 8, 2019. [Doc. 13]. Plaintiffs commenced this proceeding by filing their *Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523* (the

"Complaint") [Doc. 1] on February 13, 2019. In the Motion, Plaintiffs seek summary judgment on each of the three counts of the Complaint. Plaintiffs assert that the debt owed to them should be excepted from discharge in Count I for "actual fraud" under 11 U.S.C. § 523(a)(2)(A), in Count II for "fraud or defalcation while acting in a fiduciary capacity" under § 523(a)(4) and in Count III for willful and malicious injury under § 523(a)(6).

This Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I). For the reasons set forth below, the Motion will be denied.

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment is governed by Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56, which provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings to defeat summary judgment. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510 (citations omitted); *see* Fed. R. Civ. P. 56(c)(1). Rather, the nonmoving party must present specific facts supported by evidence that demonstrate there is a genuine material dispute. *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). When the material

2

facts are not in dispute, the role of the Court is to determine whether the law supports a judgment in favor of the moving party. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

In deciding a motion for summary judgment, the Court views the evidence and reasonable inferences in favor of the nonmoving party. *Gray v. Manklow (In re Optical Tech., Inc.)*, 246 F.3d 1332, 1334 (11th Cir. 2001). Material facts contained in the moving party's statement of material facts that are not specifically controverted by the nonmoving party will be deemed admitted. Bankr. L.R. N.D. Ga. 7056-1(a)(2). In a dischargeability action, the objecting creditor must prove its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991).

## II.    FACTS

Bankruptcy Local Rule ("Local Rule") 7056-1 requires respondents to "attach to the response a separate and concise statement of material facts, numbered separately, as to which the respondent contends a genuine issue exists to be tried" and further provides that "[a]ll material facts contained in the moving party's statement that are not specifically controverted in respondent's statement are deemed admitted." Bankr. L.R. N.D. Ga. 7056-1(a)(2). Plaintiffs filed their *Statement of Uncontested Facts* (the "SMF") on November 11, 2019. [Doc. 15]. Defendants filed their response to the SMF on November 29, 2019, in which they admitted the following material facts.[1]

Plaintiff Metro Diesel & Suspension, LLC ("Metro Diesel") is a limited liability company organized under the laws of the state of Georgia and authorized to do business in Georgia. [Doc. 1 ¶ 3; Doc. 4 ¶ 3]. Defendants are residents of Georgia. [Doc. 1 ¶ 4; Doc. 4 ¶ 4].

---

[1] Some of the facts in this subsection, namely those citing to Docs. 1 and 4, were admitted in Defendants' Answer to the Complaint. [Doc. 4].

3

Plaintiffs Teresa M. Hinton and Sean E. Hinton (collectively the "Hintons") are former members of Metro Diesel with Defendants Erin A. Blocker and Marvin K. Blocker (collectively the "Blockers"). [Doc. 15 ¶ 1; Doc. 22 at 1]. The Blockers' debt obligation to the Hintons arose from a business relationship defined in the "Operating Agreement of Metro Diesel & Suspension" (the "Operating Agreement") and a consent order (the "Consent Order") from the Superior Court of Cobb County on May 8, 2018, entered in *Teresa M. Hinton, Sean E. Hinton, and Metro Diesel Suspension, LLC v. Erin A. Blocker and Marvin K. Blocker*, Civil Action Number 17-1-1684-48 (the "State Court Action"). [Doc. 15 ¶ 2; Doc. 22 at 1].

The Consent Order fully incorporated the Settlement Agreement and Mutual Release (the "Settlement Agreement") dated April 30, 2018 and ordered the parties to strictly comply with every provision. [Doc. 15 ¶ 3; Doc. 22 at 1]. The Settlement Agreement and Consent Order required the Blockers to pay the Hintons $16,800 in three equal installments of $5,600 with the installments due on July 1, 2018, December 1, 2018 and April 1, 2019. [Doc. 15 ¶ 4; Doc. 22 at 1]. The Settlement Agreement and Consent Order also authorized the Hintons to apply for a judgment for the remaining amount due if any payment had not been paid within fifteen days after its due date. *Id.*

On or about July 17, 2018, the Hintons filed an Application for Judgment with the Superior Court of Cobb County because the Blockers failed to pay the first installment of $5,600 within fifteen days of the due date of July 1, 2018. [Doc. 15 ¶ 5; Doc. 22 at 1].

On or about November 14, 2018, the Blockers filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. [Doc. 15 ¶ 6; Doc. 22 at 1]. The Blockers listed the debt owed to Plaintiffs pursuant to the Consent Order referenced above on their Schedule D in the pending bankruptcy action. *Id.* The Blockers listed this debt

4

without marking the debt as contingent, unliquidated, or disputed. [Doc. 15 ¶ 7; Doc. 22 at 1]. The Blockers have not satisfied the monetary judgment required to be paid to Plaintiffs by the Consent Order. [Doc. 15 ¶ 8; Doc. 22 at 1].

True and accurate copies of the Operating Agreement, the Consent Order, the Settlement Agreement, a consent final judgment between 3255 Heritage Drive (GA), LLC and the Hintons, Blockers, and Western Logistics USA Inc. resolving a Cobb County civil action [Doc. 19] (the "3255 Heritage Judgment"), and the Blockers' bankruptcy schedules have been incorporated by reference.

### III.  COUNT I: ACTUAL FRAUD UNDER 11 U.S.C. § 523(A)(2)(A)

11 U.S.C. § 523(a)(2)(A) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . .
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A); *see also* 124 Cong. Rec. H11,095–11,096 (daily ed. Sept. 28, 1978) (stating that §§ 523(a)(2)(A) and (a)(2)(B) were intended to be mutually exclusive).

Plaintiffs allege that two separate debts are nondischargeable under § 523(a)(2)(A). The first alleged debt was created by the Consent Order, which fully incorporates the Settlement Agreement. [Doc. 13 at 30 ¶ 1]. The Consent Order provides, among other obligations, that "Defendants shall pay the Hintons $16,800." [Doc. 13 at 30 ¶ 2]. Plaintiffs argue that the nondischargeability of the $16,800 debt (the "$16,800 Debt") is established by collateral estoppel, also known as claim preclusion, based on the Consent Order and Settlement Agreement. [*See* Doc. 13 at 10-11]

5

The second alleged debt was created by the interplay between the Consent Order and Settlement Agreement and the 3255 Heritage Judgment. The Settlement Agreement provides that "[t]he Blockers, jointly and severally agree to indemnify, defend and hold the Hintons harmless from any and all liabilities, obligations and claims of the Landlord. . . ." [Doc. 13 at 34 ¶ 6(a)]. Plaintiffs argue the Blockers' failure to adhere to this agreement resulted in the 3255 Heritage Judgment and that their obligation to indemnify Plaintiffs to the landlord (the "Indemnification Debt") for that judgment is nondischargeable.

### A. Collateral Estoppel Does Not Establish Nondischargeability of the $16,800 Debt.

"Collateral estoppel principles apply to dischargeability proceedings." *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir. 1993) (citing *Grogan v. Garner*, 498 U.S. 279, 285 n.11, 111 S. Ct. 654, 658 n.11 (1991)). A bankruptcy court may not apply collateral estoppel to "the ultimate issue of dischargeability," but "it may utilize[ ] issue preclusion to reach conclusions about facts that the court would then consider as evidence of nondischargeability." *CC Fin., LLC v. Harvey (In re Harvey)*, No. 16-12022, AP 16-1034, 2017 WL 432788, *2 (Bankr. N.D. Ga. Jan. 31, 2017) (Drake, J.) (internal citations and quotations omitted); *see Archer v. Warner*, 538 U.S. 314, 321, 123 S. Ct. 1462, 1467 (2003) (quoting *Brown v. Felsen,* 442 U.S. 127, 134, 99 S. Ct. 2205, 2205 (1979)) ("Congress . . . intended to allow the relevant determination (whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court at a time when nondischargeability concerns 'are not directly in issue and neither party has a full incentive to litigate them.'").

"If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *In re St. Laurent*,

6

991 F.2d at 675-76. Under Georgia law, collateral estoppel applies when the following elements are met: 1) there is an identity of parties between the two cases; 2) there is an identity of issues between the two cases; 3) the issue in question was actually and finally litigated; 4) the adjudication was essential to the earlier action; and 5) the parties had a full and fair opportunity to litigate the issues in question. *See Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010) (Hagenau, J.); *Lusk v. Williams (In re Williams)*, 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002) (Mullins, J.).

The parties in the State Court Action were Metro Diesel, the Hintons and the Blockers. Therefore, they are identical to the parties in this proceeding.

The fact that the judgment in question takes the form of a consent order and settlement agreement does not necessarily render collateral estoppel inappropriate. *See, e.g., Archer v. Warner*, 123 S. Ct. 1462, 1467, U.S. 314 321-22 (2003). However, the undisputed facts do not establish that the issue of fraud was raised in the State Court Action, much less that it was fully, fairly, actually or finally litigated there.

The nature of the claims in the State Court Action are described in the Settlement Agreement as "certain disputes . . . regarding the operation of Metro Diesel . . . [and] counterclaims . . ." [Doc. 13 at 32]. The Settlement Agreement also includes blanket releases from all parties and explicitly states that "this Agreement . . . [is] not, and shall not be deemed to be an admission by any party of liability for any claim or the validity of any defense." [Doc. 13 at 36]. The Court notes that the lack of admission does not preclude a finding of fraud; however there are no undisputed facts set forth that would support such a finding at this point in this proceeding.

7

Without any information about the nature of the claims in the State Court Action, this Court is unable to determine whether the issue of the nondischargeability of the $16,800 Debt or any facts related thereto has been raised in a prior proceeding. Accordingly, summary judgment is inappropriate on this claim.

### B. Summary Judgment Is Inappropriate Under § 523(a)(2)(A) as to the Nondischargeability of the $16,800 Debt.

Having determined collateral estoppel does not apply to Plaintiffs' claim under § 523(a)(2)(A), the Court will consider whether they are entitled to summary judgment based on the totality of the undisputed facts. The circumstances in this case are nearly identical to *Archer*'s description of the facts in *Brown v. Felsen.*

> The circumstances [in the Supreme Court case of *Brown v. Felsen*] were the following: (1) Brown sued Felsen in state court seeking money that (Brown said) Felsen had obtained through fraud; (2) the state court entered a consent decree embodying a stipulation providing that Felsen would pay Brown a certain amount; (3) neither the decree nor the stipulation indicated the payment was for fraud; (4) Felsen did not pay; (5) Felsen entered bankruptcy; and (6) Brown asked the Bankruptcy Court to look behind the decree and stipulation and to hold that the debt was nondischargeable because it was a debt for money obtained by fraud. *Brown v. Felsen,* 442 U.S. at 128–129, 99 S.Ct. at 2205. . . . .

*Archer*, 538 U.S. at 319–20, 123 S. Ct. at 1466. Similarly, in this proceeding: (1) Plaintiffs sued the Blockers in state court seeking money that (Plaintiffs may have alleged) the Blockers obtained through fraud; (2) the state court entered the Consent Order embodying a stipulation providing that the Blockers would pay Plaintiffs a certain amount; (3) neither the Consent Order nor the stipulation indicated the payment was for fraud; (4) the Blockers did not pay; (5) the Blockers entered bankruptcy; and (6) Plaintiffs now ask the Bankruptcy Court to look behind the decree and stipulation and to hold that the debt was nondischargeable.

As in *Brown v. Felsen*, this Court is not confined to review of the Consent Order and Settlement Agreement to determine whether the $16,800 Debt is nondischargeable under

8

§ 523(a)(2)(A). This Court is therefore tasked with examining the facts to determine whether Plaintiffs have established that the $16,800 Debt was "obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." 11 U.S.C. § 523(a)(2)(A).

The relevant material undisputed facts are:

- The Hintons are former members of Metro Diesel with the Blockers.

- The Blockers' debt obligation to the Hintons arose from a business relationship defined in the Operating Agreement and Consent Order, which fully incorporated the Settlement Agreement.

- The Consent Order declared that the Blockers shall pay the Hintons $16,800 in three equal installments of $5,600 with the installments due on July 1, 2018, December 1, 2018 and April 1, 2019. It also provided that the Hintons may apply for judgment for the remaining amount due if any payment had not been paid within fifteen days after its due date.

- On or about July 17, 2018, the Hintons filed an Application for Judgment with the Superior Court of Cobb County because the Blockers failed to pay the first installment of $5,600 within fifteen days of the due date of July 1, 2018.

- On or about November 14, 2018, the Blockers filed for chapter 7 bankruptcy. Defendants listed the debt owed to Plaintiffs pursuant to the Consent Order on their Schedule D without marking the debt as contingent, unliquidated, or disputed.

- The Blockers have not satisfied the monetary judgment required to be paid to Plaintiffs by the Consent Order.

"[B]reach of a mere promise to pay on a contract, without more, does not constitute false representation, false pretenses, or actual fraud. If it were otherwise, every default by every debtor failing to pay a just debt would qualify as a false representation or actual fraud, an obviously absurd result." *In re Alam*, 314 B.R. 834, 837–38 (Bankr. N.D. Ga. 2004) (Bonapfel, J.); *In re Quinn*, 492 B.R. 341, 345 (Bankr. N.D. Ga. 2013) (Hagenau, J.) (same). "A settlement agreement is a contract. . . ." *World Bazaar Franchise Corp. v. CCC Associates Co.,*

9

*Inc. (In re World Bazaar Franchise Corp.)* 167 B.R. 985, 989 (Bankr. N.D. Ga. 1994) (Cotton, J.).

The Consent Order and Settlement Agreement do not establish false representation, false pretenses, or actual fraud by the Blockers. The Blockers' failure to perform under those contracts, no matter how just the debt may be, without more, likewise fails to establish false representation, false pretenses, or actual fraud. Due to the absence of a material facts establishing fraud, summary judgment is inappropriate on the nondischargeability of the $16,800 Debt under § 523(a)(2)(A).

### C. Summary Judgment Is Inappropriate Under § 523(a)(2)(A) as to the Nondischargeability of the Indemnification Debt.

There are no undisputed facts in the SMF with regard to the Indemnification Debt. The Settlement Agreement provides, in relevant part:

> 6. Indemnification By the Blockers
>
> a) The Blockers, jointly and severally agree to indemnify, defend and to hold the Hintons harmless from any and all liabilities, obligations and claims of the Landlord including costs and expenses including without limitation, all claims for past-due rent, attorneys' fees, interest, taxes and all other debts, claims or liabilities asserted by [3255 Heritage Dr. (GA), LLC ("]Landlord["])] in [Cobb County Civ. Action No. 17-A-2309] or otherwise.

[Doc. 13 at 34]. The 3255 Heritage Judgment, which resolved Cobb County Civ. Action No. 17-A-2309, provides:

> Defendants [Western Logistics USA, Inc., Sean Hinton, Teresa Hinton, Kevin Blocker, and Erin Blocker] are jointly and severally liable to [Landlord] in the total amount of $33,656.86, representing $30,574.42 in past due rent and other charges . . . and $3,082.44 in statutory attorney fees.

[Doc. 19 at 2].

In the Motion, Plaintiffs allege that the 3255 Heritage Judgment called for, among other things, indemnification of the Hintons by the Blockers for any liability to the Landlord for

10

rent. By "not protect[ing] the Hintons against claims by the landlord," and "ma[king] no effort to carrying [*sic*] through with the terms of the settlement," Plaintiffs assert, the Blockers have "obtained property" in violation of § 523(a)(2)(A) in the amount of the 3255 Heritage Judgment. [Doc. 13 at 10-11]. These are conclusory statements of law that do not support summary judgment. In the absence of any facts showing that the Blockers violated the Settlement Agreement by failing to indemnify the Hintons or that this alleged breach caused the Blockers to obtain property by false pretenses, a false representation, or actual fraud, summary judgment is inappropriate on this claim.

### IV.     COUNT II: FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY UNDER § 523(A)(4)

11 U.S.C. § 523(a)(4) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . .
> (4)     for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C. § 523(a)(4). The matter is a two-step inquiry: (1) was there a technical trust; and (2) was there a defalcation? *Quaif v. Johnson*, 4 F.3d 950, 954-55 (11th Cir. 1993). Because the answer to the first question is no, the Court need not analyze the second.

"The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." *Id.* at 953 (citations omitted). "A technical trust has been defined by the Eleventh Circuit as 'an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation,' as opposed to constructive or resulting trusts." *Caitlin Energy, Inc. v. Rachel (In re Rachel)*, 527 B.R. 529, 540 (Bankr. N.D. Ga. 2015) (Hagenau, J.) (quoting *Parker v. Ferland (In re Ferland)*, No. 09-52455, AP 09-5101, 2010 WL 2600588, at *3 (Bankr. M.D. Ga. June 21, 2010) (citation omitted) and citing *Guerra v. Fernandez–Rocha (In re Fernandez–*

11

*Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006)). "Mere friendship does not meet this standard, nor does an ordinary business relationship." *Id.* (quoting *In re Ferland*, 2010 WL 2600588, at \*3). Plaintiffs argue that a trust relationship was created by O.C.G.A. § 14-11-305 and that the Blockers were grossly reckless in paying personal expenses while failing to pay business expenses and that the risk of a breach of fiduciary duty was substantial and unjustifiable. [Doc. 13 at 10].

The fiduciary status alleged by Plaintiffs is based on Erin Blocker's position as manager and member of Metro Diesel, a limited liability company. Under Georgia law governing limited liability companies, "[a] member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances." O.C.G.A. § 14–11–305(1). "The Georgia Court of Appeals has described these duties as fiduciary duties. Nevertheless, they are not the type of trust-like duties necessary to meet the strict standard for fiduciary capacity under § 523(a)(4)." *Nat'l Identity Solutions, LLC v. Logan (In re Logan)*, No. 12-80113-BEM, AP 13-5092, 2015 WL 4940041 at \*7 (Bankr. N.D. Ga. July 1, 2015) (Ellis-Monro, J.) (citations omitted).

However, in Georgia "any fiduciary duties that a member of an LLC has may be modified or eliminated (with a few exceptions) by the operating agreement." *Ledford v. Smith*, 274 Ga. App. 714, 724, 618 S.E.2d 627, 636 (2005) (citation omitted). Those exceptions are that no provision of the operating agreement: "shall eliminate or limit liability of a member or manager: (i) For intentional misconduct or a knowing violation of law; or (ii) For any transaction for which the person received a personal benefit in violation or breach of any provision of a written operating agreement. . . ." O.C.G.A. § 14-11-305(4)(A).

The Operating Agreement provides that the "Managing Member will be Erin Blocker." [Doc. 18 at 4 ¶ 18(a)]. It further provides that "[t]he Managing Member will have management and control of the day-to-day business of the Company for the purposes stated in this Agreement [and a]ll matters outside of the day-to-day business of the Company will be decided by a unanimous vote of the Members. . ." [Doc. 18 at 5 ¶ 18(b)] except "if the total amount of any such contemplated obligation, contract, purchase, or expense exceeds a total amount of . . . ($2,500.00) in any singular instance." In such event, "the Managing Member shall seek the approval and authority of Sean Eldon Hinton. . . . ." [Doc. 18 at 5 ¶ 18(e)]. The Operating Agreement also requires the Managing Member to keep business records and provides a procedure for removal of the Managing Member. It does not otherwise modify existing fiduciary duties.

Nothing in either the limited liability statute or the Operating Agreement establishes in the Blockers the type of fiduciary capacity necessary for a claim under § 523(a)(4). Accordingly, summary judgment is inappropriate for Count II.

## V. COUNT III: WILLFUL AND MALICIOUS INJURY UNDER § 523(A)(6)

Plaintiffs seek nondischargeability of the debt owed to them pursuant to 11 U.S.C. § 523(a)(6), which provides that debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are nondischargeable. 11 U.S.C. § 523(a)(6). The Supreme Court has held that § 523(a)(6) covers only "acts done with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

The Eleventh Circuit has "conclude[d] that a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th

Cir. 1995); *accord Kane v. Stewat Tilghman Fox & Bianchi Pa (In re Kane)*, 755 F.3d 1285, 1295 (11th Cir. 2014) (quoting *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)). To establish malice, Plaintiffs must show that the Blockers' actions were "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Jennings*, 670 F.3d at 1334 (quoting *In re Walker*, 48 F.3d at 1164 (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989))).

The conduct that Plaintiffs allege gives rise to § 523(a)(6) nondischargeability is the Blockers' "transfer of funds from the business' accounts without the consent of Plaintiffs, as members of the business, in direct violation of the operating agreement," which has led to injury "including the further incurrence of further [*sic*] debt, attorneys' fees and court costs." [Doc. 13 at 12].

The Operating Agreement states that singular transfers over $2,500 shall require Sean Hinton's approval. [Doc. 18 at 5 ¶ 18(e)]. As the Consent Order and Settlement Agreement required payment of $16,800, it may be reasonable to infer that the amount of some or all of the transfers in question was over $2,500. On the other hand, the undisputed facts do not identify the specific transfers such that it is also possible to reasonably infer that there were numerous smaller transfers that did not require approval. The Operating Agreement also provides that Metro Diesel will indemnify all of its members except for "liability arising out of gross negligence or willful misconduct of the Member or the breach by the Member of any provisions of this Agreement." [Doc. 18 at 13 ¶ 64]. The fact that Metro Diesel did not indemnify the Blockers for the $16,800 Debt leads to the inference that either (1) the Blockers were grossly negligent; (2) they committed willful misconduct; or (3) they breached the Operating Agreement (perhaps by making the transfers without permission). The list is disjunctive, and breach of the

14

Operating Agreement does not alone give rise to § 523(a)(6) nondischargeability. Ultimately, there are no allegations that the transfers were made purposefully to cause injury to the Blockers or Metro Diesel or that failing to seek Sean's approval, if it was required, was wrongful and without just cause or excessive.[2] Plaintiffs are not entitled to summary judgment on this claim.

It is hereby ORDERED that the Motion [Doc. 13] is DENIED.

**END OF ORDER**

---

[2] The Operating Agreement also states that "[m]ember[s] or employee[s] will be liable only for any and all acts and omissions involving intentional wrongdoing." [Doc. 18 at 13 ¶ 65]. If "intentional wrongdoing" referred only to gross negligence or willful misconduct, then the provision in ¶ 64 would be rendered ineffective. Accordingly, the Court reads the contract as a whole, giving effect to each part, and finds that "intentional wrongdoing" in the Operating Agreement may also refer to an intentional breach of that Agreement.

15

## Distribution List

Valerie Wulff Sherman
Sherman Law Group
Suite 100
1560 Warsaw Rd.
Roswell, GA 30076

Teresa M. Hinton
971 Hendon Road
Woodstock, GA 30188

Sean E. Hinton
971 Hendon Road
Woodstock, GA 30188

Howard D. Rothbloom
The Rothbloom Law Firm
Suite 400
309 E. Paces Ferry Road
Atlanta, GA 30305

Marvin Kevin Blocker
3620 Lavilla Dr.
Powder Springs, GA 30127

Erin Ann Blocker
3620 Lavilla Drive
Powder Springs, GA 30127

Martha A. Miller
Martha Miller Law, LLC
P. O. Box 5630
Atlanta, GA 31107